Smith v. The Louisville, Evansville and St. Louis Railroad Company.

Filed June 19, 1890.

———————◆———————

No. 14,347.

SMITH v. THE LOUISVILLE, EVANSVILLE AND ST. LOUIS RAILROAD COMPANY.

COMMON CARRIER.—*Freight Train.*—*Person Aboard of by Invitation of Conductor.*—*Injury by Being Thrown from Train.*—*Complaint.*—*Sufficiency of.*—A complaint alleged that the plaintiff while riding upon a freight train by the invitation and permission of the conductor, was, without being in fault, assaulted by one of the defendant's servants and thrown from the train and under the wheels; that the other servants of the defendant, with knowledge of his assailant's intention, did not interfere to protect him from injury.

Smith *v.* The Louisville, Evansville and St. Louis Railroad Company.

*Held,* that the complaint does not state facts sufficient to constitute a cause of action, no facts being alleged to show that the relationship of carrier and passenger existed, and to remove the presumption that the defendant's freight trains were confined exclusively to the transportation of freight.

*Held,* also, that what his assailant's duties were, and what he was engaged in at the time of the assault, should have been averred.

SAME.—*Person on Freight Train by Conductor's Invitation.*—A person who goes aboard a freight train by the invitation and permission of the conductor can not be regarded as a passenger, where it does not appear that the company either by usage or by its rules and regulations permits passengers on its freight trains.

From the Floyd Circuit Court.

*C. L. Jewett* and *H. E. Jewett,* for appellant.

*A. Dowling,* for appellee.

BERKSHIRE, C. J.—The appellant commenced this action by filing the following complaint, omitting the caption :

" The plaintiff complains of the defendant and says that at the time of the grievances hereinafter set out, the defendant was a corporation, owning and operating a line of steam railroad from New Albany, Indiana, to Mt. Vernon, Illinois, and as such was a common carrier of freight and passengers; that on the 8th day of May, 1887, the plaintiff, not being in the employment or service of the defendant, was, by the invitation and permission of the conductor of such train, riding upon a certain freight train of the defendant for the purpose of being carried from New Albany to a station on defendant's railroad called Milltown; that while so upon said train, and using due care and without his fault, the plaintiff was violently assaulted by one I. A. Turner, a servant of the defendant on said train, and was, with the wicked and malicious purpose of injuring plaintiff, thrown from said train and under the moving wheels, whereby he was mangled and bruised and caused great bodily and mental pain, and was forced to submit to the amputation of one of his legs, to his damage in the sum of six thousand dollars. The plaintiff avers that the other servants of the

defendant upon said train had full knowledge of the wicked and unlawful intention of said Turner to assault and injure the plaintiff, but wholly failed and refused to interfere or protect this plaintiff, and by their negligence in so failing and refusing to deter the said Turner from his evil design, caused the injury to plaintiff aforesaid. The plaintiff avers that said injury was not caused by any negligence of the plaintiff, but solely by the negligence and wilful misconduct of the defendant and its servants as aforesaid."

The appellee addressed a demurrer to the complaint, which was sustained by the court, and the appellant reserved the proper exception.

The appellant having refused to amend his complaint, judgment was rendered against him for costs.

The only error which is assigned calls in question the ruling of the court in sustaining the demurrer to the complaint. We do not think that the court erred in its ruling.

It appears that the appellant was on board of one of the appellee's *freight trains* when the alleged assault occurred. But it is not alleged that he was a passenger on the train; the allegation is, that he was thus there on the invitation and with the permission of the conductor of the train. It does not appear that the rules and regulations of the appellee, or its practice independent thereof, extended to the public the privilege of travelling upon its freight trains; nor is it alleged that the appellant did not know when he went upon the train that it did not carry passengers. The rule is that freight trains are confined to the transportation of freight exclusively; to this rule there are exceptions. The character of the train was notice sufficient to put the appellant upon inquiry as to whether or not it was his right to board it as a passenger.

The trial court could not presume against the rule and in favor of the exception that the appellant was a passenger on the train.

If the appellant was in fact a passenger on the train, the

facts creating the relation of carrier and passenger should have been pleaded. Did the appellee, by established usage, or by its rules and regulations, allow passengers upon its freight trains, then the proper allegations should have been made.

Going aboard of the train by the invitation and permission of the conductor did not of itself constitute the appellant a passenger. *Eaton* v. *Delaware, etc., R. W. Co.*, 57 N. Y. 382 (15 Am. Rep. 513); *Houston, etc., R. W. Co.* v. *Moore*, 49 Texas, 31 (30 Am. Rep. 98).

In the last cited case it is said : " It may be true, where a railroad company habitually permits passengers to travel on its freight trains, notwithstanding it may by regulation prohibit it, that the company will incur the same responsibility to such passengers as if they were on the regular passenger cars. But when it is shown that the regulations of the company absolutely forbid passengers riding on freight trains, and where there are no cars attached to such trains except those ordinarily accompanying trains exclusively for freight, or such as, by their appearance and manner in which they are filled up, could not be properly regarded as inviting passengers into the train, the burden of proving that the party injured was justified in going upon such train as a passenger properly devolves upon those who sue for damages resulting from injuries sustained by him while on such train."

In the first cited case the facts, briefly stated, were : The plaintiff, being under twenty-one years of age, was, with two other boys, walking toward his home on the railroad track, and having been passed by a coal train moving slowly, was beckoned by the conductor in charge of it, who was then on the rear car or caboose, to get upon the train. The plaintiff and his associates acted accordingly. The conductor afterwards solicited them to go with him on his return trip to a place called Phillipsburgh, where he would procure situations for them as brakemen. They went with him. The train towards morning stopped on the track at a point where

Smith v. The Louisville, Evansville and St. Louis Railroad Company.

there was a sharp curve in the road.    In consequence of the conductor's negligence a collision occurred with another train, and the plaintiff was seriously injured.

The court holds that railroad companies, like other common carriers, have a right to make reasonable rules and regulations for the management of their business, and while they may, if they see fit, have the freight and passenger business carried on upon a single train under one management, they may also completely separate their transactions, by arranging them in distinct departments.

When this is so the duties of the engineer, conductor and brakeman of a freight train are such only as are incidental to the business of moving freight, and no power whatever is given them as to the transportation of passengers.

The court then says :   " The remaining inquiry is, whether notice to a supposed passenger will not be implied from the nature and apparent division of the business.  It would seem so.  *  *  *  The presumption is that a person on a freight train is not, legally, a passenger; and it lies with him who claims to be one, to take the burden of proof to show that, under the special circumstances of the case, the presumption has been rebutted.   So, if a stage coach proprietor should regularly carry his passengers in a stage and their baggage in a wagon, there would be a fair presumption that the wagon was not intended for passengers, though, under special circumstances, it might be used in that manner.   A person asserting that he was a passenger, though riding in the baggage wagon, would be bound to prove it.   In both these cases the distinction between the passenger and the freight business would be so marked by the external signs of classification, that any person of ordinary prudence would take notice of it.   This would be equivalent to actual notice, and the burden of proof would devolve upon him to show that the carrier had relaxed his rule.   *Robertson* v. *New York, etc., R. R. Co.*, 22 Barb. 91."   2 Redf. Am. R. W. Cases, 490; 10 Am. Law Reg. (N. S.) 615 ;   *Elkins* v. *Boston, etc.,*

*R. R. Co.*, 23 N. H. (3 Foster) 275; *Murch* v. *Concord, etc., R. R. Co.*, 29 N. H. (9 Foster) 9.

In *Hobbs* v. *Texas, etc., R. W. Co.*, 49 Ark. 357, it was held that where there is a published rule of a railway company that passengers are forbidden to ride on through freight trains, the fact that the rule has often been violated does not deprive the company of the right to begin its enforcement whenever it may deem it proper to do so, and one who boards a freight train which has no appearance of being held out for the accommodation of passengers, may be ejected from it by the conductor. *Morris* v. *Brown*, 111 N. Y. 318 (7 Am. St. Rep. 751, and note).

In *Lucas* v. *Milwaukee, etc., R. W. Co.*, 33 Wis. 41 (14 Am. Rep. 735), a different rule was recognized, where the fact was that the railroad company habitually carried passengers upon many of its regular and ordinary freight trains, and a person went on board of one of the company's freight trains, believing at the time that the train carried passengers, and received no information to the contrary, but was directed by the conductor to go aboard of the train, and after he had done so found nothing in the condition or situation of the train to indicate that passengers were not carried upon that particular train as well as on other trains of like character.

In *Creed* v. *Pennsylvania R. R. Co.*, 86 Pa. St. 139 (27 Am. Rep. 693), the rule which we have recognized was held not to apply, because of the fact that the train was a mixed train upon which passengers as well as freight were transported. These cases are so different in their facts from the case under consideration that necessarily they are ruled by different principles.

The averments in the complaint are not such as to remove the presumption that the appellee's freight trains were confined exclusively to the transportation of freight, and to raise the presumption that the appellant was on the train as a passenger, and hence the case does not fall within the rule

declared in *Craker* v. *Chicago, etc., R. W. Co.*, 36 Wis. 657 (17 Am. Rep. 504); *Goddard* v. *Grand Trunk R. W. Co.*, 57 Maine, 202 (2 Am. Rep. 39); *Passenger R. R. Co.* v. *Young*, 21 Ohio St. 518 (8 Am. Rep. 78, and cases cited).

The appellant not being on the train as a passenger, it is not material to inquire whether he was there as a trespasser or by the permission of the conductor, for in either case the appellee was not liable for the alleged assault, unless committed by an employee in the scope of his employment.

In *Noblesville, etc., G. R. Co.* v. *Gause*, 76 Ind. 142, it is said: " Counsel have cited cases declaring the familiar rule, that a master is responsible for the acts of the servant only when the latter is acting within the scope of his employment, but this was an unnecessary work, for the general rule is too well settled and understood to need support from adjudged cases. *Carter* v. *Louisville, etc., R. W. Co.*, 98 Ind. 552; *Evansville, etc., R. R. Co.* v. *McKee*, 99 Ind. 519. See note to *Fick* v. *Chicago, etc., R. W. Co.*, 60 Am. Rep. 878.

Judge COOLEY, in his work on Torts, says: " The test of the master's responsibility is not the motive of the servant, but whether that which he did was something which his employment contemplated, and something which, if he should do it lawfully, he might do in the employer's name." Cooley Torts, 629.

It is charged in the complaint that the appellant was assaulted by one Turner, a servant of the appellee on said train, but in what capacity he was serving the appellee is not stated.

Whether Turner was acting within the scope of his employment we are unable to determine from the averments in the complaint. To have rendered the complaint good it should have stated the character of service which Turner was required to perform as a servant of the appellee, and in what he was engaged at the time of the assault charged. If he was a brakeman, baggage-master, or the like, the fact should have been stated. The averment that the other servants had

knowledge of the assault, and did not come to the rescue gives no support to the complaint.

If Turner was not acting within the scope of his employment, the knowledge possessed by the other employees could not render the appellee liable. But if it could, from the facts alleged it is not disclosed that they were in a condition to have prevented the assault and its consequences.

We find no error in the record.

The judgment is affirmed, with costs.

Filed June 19, 1890.